This video was made in Cooperation with the U.S. Department of State.   May it please the court, my name is Josh Slavitt, here on behalf of the appellant, Alpha Scientific. This patent case is on appeal to this court because of three errors of law. It was based on an erroneous claim construction. It was granted in the face of genuine issues of material fact, and it was granted on an erroneous application of the doctrine of prosecution history estable. The invention at issue... Can there be genuine issues of material fact in claim construction? Well, the claim construction analysis ultimately is a question of law, but it can be based on factual determinations. Like what? So far I don't see our court following that line of precedent. Well, ultimately it is a question of law. But I've never seen our court suggest that there were any underlying facts. In fact, if you are to look, there are a whole bunch of concurrences and dissents written by Judge Mayer and others saying that there are underlying facts, but the court seems to have in bank rejected that proposition. Yes, Your Honor. The questions of the genuine issues of material fact do not have to do with the claim construction. They have to do with the application of that construction to the accused device. So the invention at issue in this case is a relatively simple device used to dispense fluid, and the relevant aspects of that are that one end is inserted into a stopper, the tube is inverted, and the other end is put in contact with the target surface. The applied force to that surface is what dispenses the fluid through the passageway. The claim construction error that occurred in this case has to do with a single claim term of stabilizing supports. The outset of the case, the plaintiff in the case, but the appellee conceded that their device met all of the limitations of the independent claims other than stabilizing supports. And so the case focused simply on that element. But the district court, in construing that claim, imposed a structural limitation, a structural exclusion on the term without support. You're bothered by the fact that the district court concluded the dispensing tip cannot be part of the stabilizing supports, right? That is correct. But in your claims themselves, you identify the dispensing tip as a separate and discrete structure from the stabilizing support. In the dependent claims, the dispensing tip is referred to as part of the passageway. In independent claim one, it clearly articulates the passageway as a separate and distinct structure from the stabilizing support. So I'm trying to see how we can get around that. Sure. The logical progression of describing this device is that fundamentally it is a dispenser body. The body has a passageway. The passageway and the body and the passageway and stabilizing supports are all found in claim one. In claim nine, the exit tube is introduced as part of the passageway. And in claim 10, the dispensing tip is introduced as part of the exit tube. And so that the dispensing tip is a structure of certain of the dependent claims and that the stabilizing supports are also, and all of these elements are essentially different parts of the dispenser body. So what we have in this case is a dispenser body that has multiple points of contact, parts or projecting surfaces that are able to engage a target surface. Mr. Slavitt, why wouldn't we look at the figures and see stabilizing supports that are clearly independent of the passageway and draw some conclusion from that in our claim construction, as the district court seems to have done in a very thoughtful opinion? The figures, as well as much of the disclosure, much of the description in the patent, relate to the preferred embodiment. And that this court has repeatedly stated that when you're construing claim terms, you start with the claims themselves and you do not necessarily draw those claims with regard to simply the preferred embodiments. So in claim one, that recites stabilizing supports and does not recite a dispensing tip. How does the acute device dispense a predetermined amount of fluid? Well, Your Honor, the accused device, and here it is depicted. Isn't that the same thing as here? Yes, it's simply a close-up of that picture. It's a portion of it. Is that by being in contact with the edge of the disk and the portion of the raised central... Predetermined means determined before you start using the device, right? Determined prior to dispensing. Prior to an application, prior to pushing it down on the surface. That's correct. And by engaging the... So how does the person who's using the accused device assess or how do they create the predetermined amount before they start to use it? The predetermined amount is... I know how it does in the patent because it depends on the length of the legs, if you will, the stabilizing supports. I'm just curious to know how you do it with the accused device. With the accused device, as it's shown there, it's in contact at two points. Contact at two points, on the right-hand side and then on the tip that dispenses the fluid, right? If I lay at the edge of the disk and here... And that's the structure that dispenses the fluid? And then the central passageway running through the central portion of the body has a defined space between the opening and the surface. And that space, that gap there, that angled gap, is a set distance that does not fluctuate. Once you engage at those two points, that distance is fixed and that when you apply it, you dispense a certain amount of fluid and as you release the pressure, there is a certain degree of suck back that always occurs and that amount of fluid that stays in contact with the surface because of surface tension is what remains. Now, I always have a problem when we have demonstrative things like this in an appellate court. Is that photo representative of the way the device is actually used on every occasion or is that just a hypothetical for how it might be used on one occasion? As a practical matter, Your Honor, this is how it is generally used. As a practical matter, generally used, you gave us a whole lot of wiggle room there to ask questions. Let me be more precise, if I may. While Helena has asserted and the instructions in their product, and I believe artfully done, talk about engaging only the edge of the disk, the fact is that with the stoppers in which these devices are placed, the rubber is sufficiently flexible and the way in which people would naturally use the device. That's the actual size of the device that you have in your hand? Yes, this is the actual device. This is the actual cues. I have several of them. Would you mind handing one to the clerk so we could take a look? I have three. Are you satisfied with that, Mr. Schneider? Absolutely. In fact, we have a demonstrative insert in the tip to show the use. Okay, thank you. In the normal use, Your Honor, a user holds the dispensing, the tube, initiates the contact with the surface at the edge of the disk, and as force is applied, it moves towards the vertical until the second point is engaged, at which point it is now fixed in relation to the target surface and the pressure is applied. If pressure is applied at only the outer edge of the disk, the flexibility of the rubber stopper can oftentimes cause the entire device to move, to bend at the insertion point, at the cannula. In the drawings you've got on the board there, what's the little bar and the ball on the left? Your Honor, these are standard needles used for blood drawing. That's a needle? I'm sorry? That's a needle? It's essentially the kind of needle that would be inserted when you have blood drawn. They may insert a pointed needle and then use that. But that shows the gauge, Your Honor, the size. It doesn't look like the one they use on me. But it is instructive in terms of the dimension of that. What's the little round thing? That's simply the same needle looking head on. Why is that relevant to the larger structure that's shown on the drawings? Because blood cells, which are much, much smaller than the size of this opening, flow freely through this kind of a needle because that's what's used for that purpose. Can I return to something you said, Mr. Slavich? You said a moment ago there's always some suckback. The patent makes a big distinction between devices that have suckback issues and their patented version. Your Honor, in distinguishing the prior art, it refers to a considerable portion of the dispensed fluid would be suckback, is that there is inevitably always suckback. With the preferred embodiment, with the accused device, there is always some degree of suckback. If you think of whatever is dispensed from the end of the passageway. And the amount of blood that needs to be deposited on the surface is a very small quantity. But the patent is talking about at least minimizing whatever suckback there would be, right? I would say that it's seeking to avoid considerable or excessive suckback and that those are with respect to preferred, like to have kind of features. The size of the gap becomes very important to the inventiveness and the advantages of the patented device, right? Because you're minimizing that suckback and getting, as Judge Clevenger suggested before, a precise predetermined amount each time. While the suckback issue does relate to preferred embodiments, what is truly essential for the device to work is that when it is engaged, it is not sealed against the surface so as to block the flow of fluid or because of that undue pressure, damage cells. So provided that the passageway remains open, and as you can see from these figures, the amount of space available for the blood to exit that opening is more than sufficient to not block the flow of fluid and to not damage cells. I was a little puzzled by the arguments in your brief and then again in your reply brief that the dispensing tip limitation is only found in certain claims and, for example, Claim 1, there is no dispensing tip limitation. Yes, Your Honor. I'm puzzled by that because Claim 1 requires a means for dispensing, right? Yes, and in Claim 2 that- And what's the structure disclosed in the spec for the means for dispensing? Isn't it a dispensing tip? Your Honor, Claim 2 recites all of those means elements and describes them as is a cannula, whereas said means for passing through said stopper container, for accessing said fluid, and for dispensing said fluid is a cannula, which is the pointed portion that goes into the rubber stopper. And so that the dispensing tip, while an element of certain dependent claims, is not a necessary element of the claim. I thought there was also a focus throughout the patent on avoiding contamination and the way in which I understand, Helena, to instruct people to use its product would avoid having the dispensing tip come into contact with the slide, but you're suggesting in regular use it frequently does. Your Honor, and this was a point that I think was misunderstood in the district court, is that the contamination is not of the sample. The contamination has to do with it contaminating the user so that you want to minimize the amount to which blood is all over the device and a real big mess. That's not what I understood from the patent, though. Perhaps you could point me in the patent to where I might garner your interpretation of it because I understood it to be more a function of contaminating the sample when I read it. No, Your Honor, because as a practical matter, the sample is already in contact with the dispensing device. It comes through it. And that the whole reason for the invention is that you're able to dispense fluid without having to remove the stopper from the container, and that removal of the stopper is what the contamination is to the user, and it's not of the sample. You still didn't convince me on the point that I made to you. Claim 2 is a dependent claim, depends from Claim 1, right? That's correct, Your Honor. And it says for Claim 2 purposes the means for dispensing is a cannula, right? That's correct, Your Honor. So what about Claim 1? What's the means for dispensing in Claim 1? It is a cannula or the equivalent of a cannula. Why? Excuse me? Why? Why does the structure that's disclosed in the definition of the dependent claim necessarily govern the independent claim? Well, to the extent that it is an example, it is shown as what it is an example. Doesn't the specification also show the dispensing tip as a means of dispensing? Well, the passageway, the exit tube, those are a variety of structures, and to the extent that the only- Assume Claim 2 wasn't in the patent. I believe that's in the written description as well, that where those means are discussed, it talks about the cannula. And with just the remaining moments of my time, if I may just simply point out, with respect to the subgrant of summary judgment, the district court had found in the court below that the device engages at a single point of contact, and both in the record at the joint appendix in 857 through 859, the declaration of David Levine, as well as evident from this figure that was also in the court below, that it does not engage at a single point. Thank you, Your Honor. Thank you, Mr. Slavitt. We'll restore your rebuttal time. Would you give Mr. Schneider an extra three minutes if he needs to use it? Mr. Schneider. May it please the court, first, if I may, I'd like to introduce Mr. Eric Peterson, Vice President of Halida, and sitting next to him on his right, Mr. Michael Dixon of my office, who gets the credit for anything you find in the brief that's good. Let's start out with the doctrine of equivalence. Yes, sir. The prosecution history estoppel in this instance is not based on an amendment that surrenders claim scope. It's based on the prosecution history distinguishing the Fulg's reference. Yes, sir, based on argument rather than amendment. What makes that clear and unmistakable, the predetermined amount language? How is that clearly and unmistakably surrendering use of the dispensing tube as part of the stabilizing support? At this point, when this application was written and prosecuted in the early 1990s, patent attorneys were sufficiently sophisticated. They didn't say, I hereby disavow. I hereby disclaim. So we have to look at the affirmative arguments that were made. Repeatedly, the affirmative arguments were made as to how you get this predetermined amount. But even before that, if I may, before the patent examiner first picked up the application to look at it, a comparison of two figures demonstrates that dispensing tip cannot be a stabilizing support. And those two figures are from page 37 of the joint appendix, which is, and I have copies of the two pages, if I may hand them over, so the court doesn't have to look through. We have them here. If you look at page 37 of the joint appendix. We're there. Item 22 is defined as the dispensing tip in figure 3. And in figure 4, item 32 is the drop of blood. Now, if you compare that to page 564 of the joint appendix, the prior art to Fobes, which was cited by the applicant, in figure 3, you'll see a dispensing tip at the top, number 26. And in figure 2, you see the drop of blood, 36, coming out of the dispensing tip. Now, what did the applicant for patent say in the original application before anybody saw the hell out of the product and before the examiner even evaluated the application? At page 39 of the joint appendix, column 1 of the patent. But still, it couches its distinction in terms of dispensing predetermined amounts. It does not disclaim stabilization using the dispensing tube. It does. Where does it do that? I've got the prosecution. Page 39 of the joint appendix, which is the first page of the patent itself. Okay, help me with that. Column 1, talking about the Fobes patent, starting at line 50, which that first part talks about the contamination, answering Judge Moore's question, but continuing on to line 54. Also, because the dispensing tip of the sighted device lacks means to stabilize itself against a target surface. Right then and there, we are told a dispensing tip of the prior art can't be a stabilizing support. This is before the examiner made a rejection. And when the examiner rejected the claims... Well, but the problem is, as you point out, the Fobes reference never contacts the slide or the surface that you're applying the blood to. And so there is no issue of stabilization at all in Fobes. Now we've got a device and a patent that is focused on stabilization. Where does Fobes give us any clear indication that stabilization was ever in play? It's only talking about predetermined amounts of dispensing of fluids. Now you have to get to the actual rejection, what the examiner said and how Alpha responded. Correctly or incorrectly, the examiner said at page 565 that Fobes has the dispensing tip. And at page 176 in the office action, Fobes has upper stabilizing support 32. What page was that? 176. Yes, I'm with you. The examiner says Fobes includes the upper stabilizing support 32. 32 is, in the Fobes document, what you might call an elongated disc. Whereas in the Helena product we have a circular disc. We're on page 176. Are we looking? Hard to read. At the bottom of the page, I'm sorry, at the top of the page, the second line says and upper stabilizing supports element 32. The first two lines from the preceding page. So the examiner is saying element 32 are stabilizing supports in the Fobes document. Alpha responds, Your Honor, by saying cannot dispense a predetermined amount, which is undisputed. The stabilizing supports contact the target. And with respect to the physical parts. We're not talking about the method claim. We're talking about the physical parts. In Fobes, the dispensing tip 26 does not touch the target. We're not talking about contorting the product as shown. I think you can draw a very reasonable connection between dispensing predetermined amounts and the stabilization in the inventive device. But I'm still looking for this clear and unmistakable surrender of scope. Clear and unmistakable. That's just very definitive and demanding language. As I said before, Your Honor, I'm not sure that attorneys are going to use the words I hear by disclaim. When you look at each and every example, each and every comment, you have stabilizing supports contacting the target and you have a dispensing tip which never contacts the target. That's the distinction. And in the Ward document, the second reference, the tip, if you will, does in fact contact the target. Your colleague argues that he gets a predetermined amount every time he uses it. Even though he has as his stabilizing support one outside issue and then one piece of the tip that's doing the dispensing. You're arguing that you need to have two independent pieces of stabilizing support independent of the structure that's doing the dispensing in order to get a predetermined amount. You were right on that. You prevail, I would think. But what do you do with his argument? That's why I asked him in the beginning. I asked him how do you get a predetermined amount with your device? Now, what's your response to his argument as to how he gets a predetermined amount? It's a two-part response. The first part of the response is let's assume the pictures you've seen are correct and accurate. As opposed to this old thing you gave me? As opposed to the way the device Helena believes actually works. Let's assume the picture is accurate and that you have two-point contact. Can you hand us up your device? Thank you. Please proceed. The evidence submitted to the district court supports, if you will, the physical picture that you've seen. The evidence submitted to the district court is a picture taken on behalf of the appellant. What does the evidence say, though, about whether or not the dispensing tip in routine use comes in contact with the target surface? What kind of evidence exists? Do you have an expert that says? I certainly saw in the appendix Helena's instructions. The instructions clearly show a contact only with the disk and not the dispensing tip on the surface. But even as I sit here and do that, when I do that, it jiggles around and bends. This may have hurt you more than help you. But I'm just wondering what actual evidence exists in the record about how this is used in normal operation. Because this was summary judgment. And I'm trying to ascertain whether there's a dispute of fact about whether this thing is operated with contact of the dispensing tip or solely contact of the disk. I would respectfully direct your attention to page 48 of our brief and the citations in the first full paragraph where Helena's witness explained that the operation of the device is based on the manual dexterity of the user. When you take this device, sir, and you want to have, and it's full of blood or something, fluid up in the part I'm holding, the top part, right? And what you want to do is you want to deposit a little tiny drop of it on a plate of some sort, right? So is it done simply by touching it anywhere? Is it making an angle on the piece here? Is that what causes the fluid to come out? And if Your Honor would look at page J109, Joint Appendix page 109, you hold the device almost like the way you would hold a writing instrument. You press on the edge of the disk and a random amount of blood comes out. That's it. However you choose to do it, so long as you cause the little pieces hanging down to bring an angle, that's what really opens up the valve and lets the fluid out. Exactly. It's a random amount, depends on the manual dexterity of the user. I'm a little uncomfortable getting into kind of factual distinctions based on things on appeal, but I notice that the device as inserted in the test tube that I have is at a different angle than the one that Judge Clevenger has, and that seems to affect it all as well, doesn't it? It does, and the same page that I cited in Helen's brief, Your Honor, talks about the possibility of being off-center or off-vertical. What is another distinction in the way the Helena device, the accused device, functions as compared to the patented claimed invention and the description, which talks about avoiding off-center or off-vertical forces? I realize that both parties are treating the doctrine of equivalence issue in this case as though we had to decide whether there was argument-based surrender, which, as you know, doesn't require an amendment. The trial judge seemed to think that there was a festo surrender. The trial judge said there was a claim was amended to get around folks, and the claim was narrowed to get around folks, and I think it's pretty clear that the claim was narrowed. I mean, there was a limitation added that hadn't been there before, right? And then the trial judge said, Alpha has provided no evidence or argument that rebuts the festo presumption, i.e. to say it was not foreseeable or it was tangential or it was other. Why have you chosen not to argue that the surrender here was based on festo and having made a narrowing amendment? I'm not sure that the amendment was a narrowing amendment as to this feature. I thought that the argument was found to be a narrowing amendment. Yes, sir. I mean, the way festo works is that if it's a narrowing amendment, then there's a presumption that you surrender all your equivalence. The patentee can claw back a whole range of equivalence, for example, if he can show, presumably he wouldn't show for lack of foreseeability here, he would show that the equivalent in question was tangential to the reason for the amendment. But I didn't understand your adversary to have argued to the judge below tangentiality. Did not. You're correct. It was not argued below, and in addition to the festo statement made by the district court, we believe that the argument based estoppel in the entire context of the prosecution history and in the entire context of everything said in the patent document itself was at least as strong an argument, so we emphasize that on appeal. If there was a narrowing amendment, it's clear and unmistakable if it's a narrowing amendment. Yes, sir. But, counsel, I thought what you were about to say, and I thought that it was magnanimous and correct on your part, but then you stopped and Judge Klumger continued, you didn't get a chance to finish, so I'll give you a chance to be the magnanimous and correct one, and that is that the amendment that was made, that to the extent that it narrowed, it wasn't with regard to stabilizing support. That's correct. And so that the reason that you're arguing argument based estoppel is because even if the district court characterized it as amendment, that is focusing on a different element and not the one you're focusing on here. That's correct. Okay, thank you. There's no dispute as to what was amended, and it specifically was not to what could or could not be a stabilizing support or how it functioned. That was pure argument estoppel. So there really is nothing to support the notion that there is an amendment based estoppel vis-a-vis the stabilizing support. That's correct. Okay, just wanted to make sure. And hopefully we never asserted that it was, but I don't think we did. In the environment of the device, as expressed by the experts, you will have a contamination problem if you attempt to use the Helena product as portrayed in the demonstratives. I would respectfully direct the court's attention to column two of the patent, lines 39 through 44 in response. Does the accused device have to be contamination free in order to imprint? It doesn't have to be contamination free. It's an object of the patent is to avoid contamination, right? Exactly. It's not a limitation. Nowhere in the claim. Of course not, but it does tell you how to interpret stabilizing support if that's one of the objectives is to be contamination free. And on page 39 of the record, which is the patent column two, in response to Judge Moore's questions, you'll find it lines 39 through 44 that it is contamination of the stabilizing supports that you're trying to avoid. In other words, if the dispensing tip is a stabilizing support, then you're going to get blood on the dispensing tip, which is what you're supposed to avoid according to the patent. Thank you very much. Thank you, Mr. Schneider. Mr. Slavitt, we have a little more than three minutes to go. Yes, Your Honor. Let's come to the point where we just ended with Mr. Schneider pointing us out to column two of the patent, which makes it an objective of the entire invention. Now, we're not talking about embodiments here to separate the stabilizing supports from the dispensing tip. Yes, Your Honor. It is one of the objectives, and it is clear from the precedent of this court that not every objective needs to be met by every embodiment, that different embodiments will address certain of the objectives and other embodiments will address other objectives. Is there any embodiment or even a suggestion anywhere in this patent that the dispensing tip can function as the stabilizing support? Yes, Your Honor. In column one, in which my colleague was citing regarding the Phobes device, there are several passages, and the passage, this goes at column one, starting line 47, in talking about why Phobes is incapable of operating properly in the manner of the claimed invention, is that because it requires a tip of special design to prevent formation of a seal against the target surface, which would prevent fluid from exiting or damage cells, and then a few lines later, where it says also, because the dispensing tip lacks means to stabilize itself. So in Phobes, that tip does not have means to stabilize itself, whereas in the accused device, that tip does have means to stabilize itself. It's not saying that the body or the other elements are stabilized, but here it says the tip has means to stabilize, and that would suggest that certain tips which can stabilize and don't block the flow. I'm not following you exactly. You're saying because you distinguish Phobes, suggesting that there the dispensing tip is not capable of stabilizing, therefore I should conclude that you have somehow alluded to the notion of the dispensing tip in the context of this invention being one of the stabilizing supports. To the extent that the discussion of the prior art and talking about the shortcomings of the prior art, we're talking about the specific embodiment that's Phobes, and then we say that you need a tip of special design in order to operate a device in this manner, and it's out of the scientific position that this is a tip of special design in which that tip does have a way of stabilizing against a target surface, and that simply in distinction to the prior art, in the way in which the invention is distinguished over the prior art, that tip makes that, shows that. Now, with regard to the touching at a single point matter, that the device, there is evidence in the case, and this has been submitted, and despite the district court's finding that it does operate at a single point, and that does then result in random amounts of fluid, the fact is that in the declaration of Mr. Levine, at the record where we get cited in 857, that the device can be held even at a single point and dispensed with an amount of blood that can be controlled. Now, that's not the preferred way of operating it, because it is unstable, and it does bend, and the fact is that, as your honors could tell simply by holding the device in a stopper, that the rubber in the stopper causes the flexing. You end up with this predetermined amount in light of that. Not only predetermined, but the column two, as I'm looking at it, says exact amount. We're looking for an exact predetermined amount each time. Look at lines 16, 17 here, dispensing in this exact small quantity of blood. How's that going to happen with this device flexing around in the rubber of the tube? Your honor, with respect to it touching at a single point, it's not simply that as soon as it touches, it dispenses. A reasonable amount of force has to be applied against the stopper, because that's what deforms the stopper, reduces the volume, and drives fluid out. How are you going to get an exact small amount predetermined every time? When it is engaged at those two points, as you see. How are you going to engage it at those two points every time? Well, your honor, in the way in which if a bicycle has two wheels, if you instruct somebody to operate it simply by popping wheelies, that doesn't make it a device that is a unicycle. And here we have a device with two points of contact, and to simply instruct that you operate it at one point doesn't remove the second point. But you've told us that it really depends on how much pressure you apply to get any fluid to come out at all. And I suppose if you really apply a lot of force, you'll get a little more fluid out than if you only applied enough force to get a tiny bit of fluid out. You start out by applying more, but then you have more suckback, and what remains, what sticks to the glass is still... You're holding down real hard, and, boy, you let go the minute you got the predetermined amount out. Right, but you let go... Right, I mean, so you do it all by eyesight? Your honor, as you dispense it, there is, even with enough to get blood out or an excessive amount of pressure where more would come out initially, you would simply have more get drawn back in, so that what remains on the glass after the pressure and relief of pressure is a defined amount. With the patent, with the item that would be made according to the patent, there are no mistakes. Once you have set your stabilizing supports, push the button, it's always the same. Well, again, there is no button. It's pressing downward, and here you have also a defined distance and a fixed distance. But isn't the gap too small? You're going to get a different amount of suck back on each dispensing movement depending upon how you do it. No, your honor. As a fixed gap, the gap doesn't change, and so that if you apply enough for the blood to just touch or for more to come out, the surface tension, the stickiness of the blood on the surface, is what holds the amount there, and the excess is drawn back. Do you have any final comment? Simply with respect to Festo, that there were two independent bases of distinction that were offered in the prosecution of the patent. One had to do with dispensing a predetermined amount, and the other one has to do with engaging the target surface, and that with that, the patentee canceled the claims that recited predetermined amount and amended the claims that remained to add the phrase to a target surface so that there's clearly no estoppel, as the district court has said, that relates to the predetermined amount. If anything, what would be found from the prosecution history estoppel is that it relates to engaging the target surface. Thank you, Mr. Slovitt. All rise. You all may go, and preserve a safe day.